**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| MARCI LIVINGSTON | CIVIL ACTION NO. 04-1303 |
| VERSUS | JUDGE ROBERT G. JAMES |
| LYNDA GAVIOLO & CHILDREN'S COALITION FOR NORTHEAST LOUISIANA | MAG. JUDGE JAMES D. KIRK |

**RULING**

Plaintiff Marci Livingston ("Livingston") brings this suit against Lynda Gavioli ("Gavioli") and the Children's Coalition for Northeast Louisiana (the "Coalition") (collectively the "Defendants") to recover compensation as a result of violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.; defamation; and tortious interference with contract.

Pending before the Court is a Motion for Summary Judgment [Doc. No. 10] filed by the Defendants. Livingston has filed a Memorandum in Opposition to the Motion for Summary Judgment [Doc. No. 14]. For the following reasons, the Defendants' Motion for Summary Judgment is hereby GRANTED IN PART AND DENIED IN PART.

**I.  FACTS AND PROCEDURAL HISTORY**

The Coalition is a non-profit organization serving children and families in the Northeast Louisiana Region. Gavioli serves as the Coalition's executive director and is responsible for hiring staff, monitoring volunteers, and developing networks that advocate assistance for children and families. In March 2002, Livingston began performing volunteer work at the Coalition. Livingston's duties included direct networking on behalf of the Coalition and helping with grant-

1

writing.

Sometime thereafter, Gavioli gave Livingston an opportunity to teach parenting classes through a contract the Coalition had with the NSU Child and Family Network ("NSU"). Livingston was paid a flat rate for the parenting classes.[1] During this time, Livingston continued to perform volunteer work at the Coalition.

On September 15, 2003, Livingston was employed by the Coalition under funding provided by the Kellogg Grant. The Kellogg Grant allowed Livingston to remain employed until November 30, 2003, when the grant expired.[2] During this time, Livingston worked on the Early Learning Opportunities Act Grant ("ELOA Grant") application. The ELOA Grant was to provide a source of funding to keep Livingston employed after the Kellogg Grant expired.

In early November of 2003, Livingston was offered a full-time position with the Early Head Start Program that is administered by Volunteers of America ("VOA"). At this time, Livingston informed Gavioli that she would be terminating her employment on November 14, 2003. During this meeting, Gavioli requested Livingston's time records.

On about November 11, 2003, an exit meeting took place between Gavioli and Livingston. Livingston asked to be paid for the grant-writing services she had performed. Although Livingston cannot recall precisely what Gavioli said in response to her request, she had the impression that she would be paid.

---

[1]Livingston billed NSU and the Coalition, and, after NSU paid the Coalition, the Coalition paid Livingston.

[2]The Court notes that persons who are employed at the Coalition are paid with grant money from a specific grant. Thus, when a grant expires, the person is no longer employed at the Coalition.

The Defendants contend that the purpose of the meeting was to go over some discrepancies in Livingston's time records. The Defendants allege that because of the discrepancies, Gavioli concluded that (1) Livingston had not worked the full 30 hours per week for which she was being paid; and (2) Livingston had, on at least one occasion, billed the same block of time to teach a parenting class at NSU and to work at the Coalition.[3]

Several days after Gavioli and Livingston met, Livingston corrected her time record to indicate that she worked for the Coalition on September 17, 2003, and taught a parenting class at NSU on September 18, 2003.

However, before Livingston corrected her time records, Gavioli had provided Peggy Buffington ("Buffington"), a prospective employer at VOA, an employment reference for Livingston. Gavioli told Buffington that the Coalition asked Livingston to leave early because there were "some discrepancies in her time sheets and that there were some things that made us very concerned." Buffington told Livingston that VOA could not hire her because of Gavioli's reference.

On May 18, 2004, Livingston filed suit in the Fourth Judicial District Court for the Parish of Ouachita, alleging violations of the FLSA, defamation, and tortious interference with contract. On June 25, 2004, the Defendants removed the action to this Court based on federal question jurisdiction.

On October 14, 2005, the Defendants filed a Motion for Summary Judgment [Doc. No. 10]. On November 12, 2005, Livingston filed a Memorandum in Opposition [Doc. No. 14] to

---

[3]Being paid by two different grants for the same hours on the same day is known in the non-profit sector as supplanting. Supplanting is not permitted because it might put the Coalition in jeopardy of losing its grants.

the Motion for Summary Judgment. On December 2, 2005, the Defendants filed a Reply.

With full briefing by all parties completed, the Court is now prepared to rule on the Motion for Summary Judgment.

## II. LAW AND ANALYSIS

### A. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record that highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating

the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Tortious Interference With Contract

The Defendants argue that Livingston's claim that the Defendants tortiously interfered with a contract between Livingston and NSU cannot be maintained because she was not a party to the contract at issue. In Livingston's memorandum in opposition, she concedes that she cannot maintain a cause of action based on tortious interference with a contract. After review, the Court finds that summary judgment is appropriate on this claim, and it is DISMISSED WITH PREJUDICE.

### C. Fair Labor Standards Act

The FLSA contains minimum wage and overtime pay requirements. 29 U.S.C. §§ 207-207. However, the Supreme Court has held that, an individual who, "without promise or expectation of compensation, but solely for [her] personal purpose or pleasure work[s] in other activities carried on by other persons either for their pleasure or profit" (i.e., a volunteer) falls outside the coverage of the FLSA. *Tony & Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 295 (1985) (citing *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947)). The regulations interpreting the FLSA define a volunteer as one who performs civic, charitable, humanitarian, or public services in the absence of promise or expectation of compensation for performing these types of services. *See* 29 C.F.R. § 553.101(a).

At issue is whether Livingston is considered an employee or volunteer when she worked on writing the ELOA Grant. The Defendants contend that, while Livingston was compensated by the Kellogg Grant to perform certain duties for the Coalition, she was not to be compensated for

grant-writing. The Defendants also contend that Livingston testified in her deposition that she had no expectation that she would receive compensation for grant-writing she performed at the Coalition.

Livingston disagrees and argues that she is entitled to be compensated for the hours she spent writing the ELOA Grant because Gavioli said to "bill her" for the hours Livingston spent writing the ELOA Grant.

The Court finds that under these circumstances summary judgment is inappropriate because a genuine issue of fact exists as to whether Livingston wrote the ELOA Grant as a volunteer or as an employee of the Coalition. The Defendants' Motion for Summary Judgment on this issue is DENIED.

### D. Defamation

"To maintain an action in defamation, the following elements must be shown: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury." *Gugliuzza v. K.C.M.C., Inc.*, 606 So.2d 790, 791 (La. 1992) (citing *Cangelosi v. Schwegmann Bros. Giant Super Mkts.*, 390 So.2d 196, 198 (La. 1980)).

In the context of an employment reference, employers are provided a privilege to speak as set forth in Louisiana Revised Statute § 23:291(A), which states in pertinent part:

> Any employer that, upon request by a prospective employer or a current or former employee, provides *accurate information* about a current or former employee's job performance or reasons for separation shall be immune from civil liability and other consequences of such disclosure provided such employer is not acting in bad faith. An employer shall be considered to be acting in bad faith only if it can be shown by a preponderance of the evidence that the information disclosed was *knowingly false and deliberately misleading*.

La. Rev. Stat. § 23:291(A) (emphasis added).

Livingston contends that Gavioli defamed her by telling Buffington that Livingston had "some discrepancies in her time sheets." Buffington then refused to hire Livingston. According to Livingston, Gavioli was aware that there was confusion about the time sheets before she spoke with Buffington and should have made further inquiry. Because Livingston's time records were ultimately determined to be accurate, she claims that the Defendants are liable.

The Defendants contend that Gavioli did not defame Livingston because when she provided an employment reference to Buffington, it was accurate and in good faith. The Defendants also contend that Livingston cannot prove as a matter of law that Gavioli's reference was knowingly false and deliberately misleading.

The Court finds that Livingston has not demonstrated that Gavioli relied on inaccurate information when she provided a reference to Buffington, nor that Gavioli's reference was knowingly false and deliberately misleading.

Black's Law Dictionary defines knowingly and deliberately as willfully, intentionally, or purposefully done. *See* Black's Law Dictionary 426, 872 (6th ed. 1990).[4] At the time Gavioli provided a reference to Buffington, Livingston admitted that Gavioli accurately conveyed to Buffington what she knew, and that she had no way of knowing that the time records were inaccurate. Several other people also examined Livingston's time records, sign-in sheets, and personal calendar, and each person determined that there were discrepancies.[5] In addition, after

---

[4]Neither party has cited the Court to any cases interpreting La. Rev. Stat. § 23:291(A). The Court was also unable to locate any case in the Fifth Circuit or the State of Louisiana that interprets La. Rev. Stat. § 23:291(A).

[5]These people included parenting resource coordinator, Michele Ticheli; the grant and budgeting manager, Andrea; and the accountant, Francis Huffman.

Livingston corrected the discrepancies in her time sheets, Gavioli immediately contacted Buffington and informed her that the discrepancies had been cleared up.

The Court finds that under these circumstances, Livingston has not created a genuine issue of fact that Gavioli acted in bad faith. The Defendants' Motion for Summary Judgment on Livingston's defamation claim is GRANTED, and it is DISMISSED WITH PREJUDICE.

## III. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [Doc. No. 10], is GRANTED IN PART AND DENIED IN PART. The Defendants' Motion for Summary Judgment on Livingston's FLSA claim is DENIED. The Defendants' Motion for Summary Judgment on Livingston's tortious interference with contract and defamation claims is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 5th day of January, 2006.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE